UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHELSEY NICOLE LANDRY, ET AL. | * | CIVIL ACTION NO. 24-2096 |
| | * | |
| | * | SECTION "P"(1) |
| VERSUS | * | |
| | * | JUDGE DARREL J. PAPILLION |
| | * | |
| ST. TAMMANY PARISH SCHOOL BOARD, ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| | * | |
| ************************************ | * | |

### REPORT AND RECOMMENDATION

Before the Magistrate Judge, upon referral from the District Judge, is the Defendants' 12(b)(6) Motion to Dismiss (Rec. Doc. 6). Having considered the Motion, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motion to Dismiss be GRANTED, Plaintiffs' federal law claims against all Defendants be DISMISSED WITH PREJUDICE, and Plaintiffs' state law claims be DISMISSED WITHOUT PREJUDICE.

#### BACKGROUND

Minor child L.T. has a speech development disorder that limits L.T.'s ability to speak, express herself, and communicate. Rec. Doc. 1 at ¶ 13. L.T.'s speech development disorder qualifies L.T. to receive Social Security Disability benefits, required the St. Tammany Parish School Board to adopt an Individual Education Program "IEP" and Positive Behavior Intervention Plan ("PBIP") for L.T., and requires L.T. to attend a special education classroom setting on a full-time basis. *Id.* at ¶¶ 5, 8, 16.

This case concerns allegations made by Plaintiffs, Chelsey Landry and Dwayne Toney, individually and on behalf of their minor daughter, L.T., who allege that L.T. sustained injuries during two separate incidents involving two different teachers at E.E. Lyon Elementary School

when L.T. was four years old. Specifically, on May 9, 2024, L.T.'s mother, Plaintiff Chelsea Landry, witnessed L.T.'s teacher, Defendant Catherine Mumphrey, "snatch L.T. by her arm in the school pickup line." *Id.* at ¶ 17. Thereafter, L.T.'s mother "noticed a bruise on [L.T.'s] arm." *Id.* That same month, on May 22, 2024, L.T. began "hitting, kicking, spitting, refusing to move, elopement, and non-compliant task refusal behaviors" while at school—behaviors that were anticipated by and planned for pursuant to her IEP and PBIP. *Id.* at ¶¶ 15, 18. In response, Defendants Laren Brenckle and Catherine Mumphrey "snatch[ed] L.T, out of a chair, with each Defendant grabbing one of her arms, and proceeded to drag [L.T.] across the room." *Id.* at ¶ 18. Parts of the incident were caught on videotape, and the incident "left a large bruise on L.T.'s arm." *Id.* at ¶¶ 18, 22. After L.T.'s mother reported the bruise to the school, the Covington Police Department reviewed the videotape of the incident and arrested both Brenckle and Mumphrey for cruelty to a juvenile. *Id.* at ¶¶ 19-20. This is allegedly "not the first incident of battery by a STPSB teacher involving L.T.," and Plaintiffs assert that Defendant Brenckle was previously charged with cruelty to a juvenile prior to being hired by STPSB. *Id.* at ¶¶ 25, 25.

Plaintiffs, Chelsey Landry and Dwayne Toney, individually and on behalf of their minor daughter, L.T., have now filed suit and named the following parties as defendants: St. Tammany Parish School Board ("STPSB"); Frank J. Jabbia, in his official capacity as the Superintendent of the STPSB; James Braud, in his official capacity as the President of the STPSB; Lauren Faciane, the Principal of E.E. Lyon Elementary School; Laren Brenckle, a teacher at E.E. Lyon Elementary School; and Catherine Mumphrey, a paraprofessional at E.E. Lyon Elementary School. Rec. Doc. 1 at ¶ 2. Plaintiffs assert claims against Defendant STPSB for violations of Title VII of the Americans with Disability Act ("ADA") and the Rehabilitation Act. *Id.* at ¶¶ 28-51. Plaintiffs also assert the state law claims against all Defendants for violations of the Louisiana Human Rights

Act and negligence and assert claims against Defendants Brenckle and Mumphrey for the intentional torts of battery, assault, and intentional infliction of emotional distress. *Id.* at ¶¶ 52-76.

Defendants filed a motion to dismiss, arguing that Plaintiffs' "Complaint does not provide a factual basis for the Defendants to allegedly discriminate against [L.T.]," and because Plaintiffs do not assert facts showing that Defendants discriminated against L.T., Defendants argue that Plaintiffs "have not established a federal claim." Rec. Doc. 6-1 at p. 2. As Defendants argue, this "case consists of a potential state law claim." *Id.* Defendants also argue that Plaintiffs fail to adequately allege any claim against any Defendant and that Defendants Jabbia, Faciane, STPSB, Brenckle, and Mumphrey have "qualified immunity." *See generally id.* at pp. 6-14, 18-20. Defendants further ask that the Court dismiss all claims against Defendants in their official capacity because the claims are redundant of the claims against the STPSB. *Id.* at pp. 6-10.

Plaintiffs opposed, arguing that they have sufficiently pled their claims under the ADA and the Rehabilitation Act—both as to the actions of Defendants Brenckle and Mumphrey, who Plaintiffs allege physically abused L.T. because of her disability, and as to the actions of Defendants STPSB, Jabbia, Braud, and Faciane, who Plaintiffs allege "allowed for and selected L.T. for abuse." Rec. Doc. 9 at pp. 6-7, 9-11. Plaintiffs also argue that Defendants state valid claims against STPSB, Jabbia, Braud, and Faciane because they can be held liable for the tortious conduct of Defendant Brenckle and Mumphrey. Plaintiffs further claim that Defendants are not entitled to qualified immunity. *Id.* at pp. 7-9.

**LAW AND ANALYSIS**

I.   **Motion to Dismiss Standard**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule

8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citations and internal alterations omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re: Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

4

> defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

## II. Plaintiffs' ADA and Rehabilitation Act Claims

Plaintiffs bring claims against STPSB pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act. *See* Rec. Doc. 1 at ¶¶ 28-51. To state a claim under Title II of the ADA, a plaintiff must allege: "(1) that he is a qualified individual ...; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *T.O. v. Fort Bend I.S.D.*, 2 F.4th 407, 417 (5th Cir. 2021) (citations omitted). A claim under § 504 of the Rehabilitation Act is analyzed similarly, except that "[l]iability [under § 504] can only be found when the discrimination was '<u>solely</u> by reason of her or his disability,' not when it is simply a 'motivating factor.'" *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002) (emphasis added). A plaintiff need not identify an official policy to sustain an ADA or Rehabilitation Act claim, and a public entity may be held vicariously liable for the acts of its employees under either statute. *T.O.*, 2 F.4th at 417; *see also Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574-75 (5th Cir. 2002) (noting that in the Fifth Circuit, a "public entity . . . is liable for the vicarious acts of any of its employees" under Title II and Section 504).

Defendants argue that Plaintiffs fail to state a claim pursuant to either statute because: Plaintiffs do not plead sufficient facts to establish that L.T. is "disabled within the meaning of the ADA"; Plaintiffs do not "identify which services, programs, or benefits L.T. was denied"; and Plaintiffs fail to plead facts demonstrating that L.T. was discriminated against because of her disability, and, instead, Plaintiffs plead facts demonstrating that the alleged misconduct was taken

5

in response to L.T.'s misbehavior—not her disability. Rec. Doc. 6-1 at pp. 15-16. Plaintiffs, on the other hand, contend that they have adequately pled that L.T. is a qualified individual with a speech development disorder who was "substantially limited in several major life activities," and that L.T. was subjected to discriminatory treatment by Defendants Brenckle and Mumphrey, who physically abused her because of her disability. Rec. Doc. 9 at p. 6. Plaintiffs further argue that Defendants STPSB, Jabbia, Braud, and Facine are liable for violations of the ADA and Rehabilitation Act because they allege that these Defendants were "legally responsible for the functioning" of the school and that they "allowed for and selected L.T. for abuse." *Id.* at pp. 9-10.

As an initial matter, the Court finds that Plaintiffs sufficiently allege that L.T. is disabled within the meaning of the ADA. Plaintiffs identify L.T. as a minor who suffered from a speech development disorder that was so severe that L.T. received Social Security Disability benefits since birth, had an IEP and PBIP adopted for her by the STPSB, and attended the special education classroom setting full-time since August 2023. Rec. Doc. 1 at ¶¶ 8, 15, 16. Plaintiffs indicate that L.T.'s disability caused limitations in her ability to speak, express herself, and communicate. *Id.* at ¶ 13. And the STPSB allegedly identified kicking, spitting, refusing to move, elopement, and non-compliant task-refusal behaviors as behaviors associated with L.T.'s disability. *Id.* at ¶ 18. Accepting these facts as true at this stage, as this Court is required to do, these facts sufficiently demonstrate that L.T. had a "disability" within the meaning of the ADA. *See* 42 U.S.C. § 12102.

Plaintiffs fail, however, to plead sufficient facts to indicate that Defendants Brenckle and Mumphrey, or any other Defendant, mistreated L.T. "<u>by reason</u> of h[er] disability"—an essential element to Plaintiff's ADA and Rehabilitation Act claims. Plaintiffs identify two incidents wherein Defendants Mumphrey and/or Brenckle allegedly physically harmed L.T. *Id.* at ¶¶ 17-18. The first incident occurred on May 9, 2024, when Defendant Mumphrey "snatch[ed] L.T. by the arm." *Id.*

at ¶ 17. Plaintiffs do not provide any further context as to this first "snatch." Nor do they even allege that the bruise L.T.'s mother observed following the incident was caused by this "snatch." The second incident occurred on May 22, 2024, when Defendants Mumphrey and Brenckle "snatch[ed] L.T. out of a chair," "grabb[ed] her arms," and dragged her across the room, leaving a large bruise on L.T.'s arm. *Id.* at ¶ 18. While Plaintiffs allege that Brenckle and Mumphrey targeted L.T. in these instances "on account of her disability and attendant vulnerability . . . [and] her disability-related limitations, including limitations in speaking, expressing herself, and in communicating," and that Brenckle and Mumphrey did not treat other non-disabled individuals this way, *id.* at ¶¶ 12, 13, 34, 35, these are legal conclusions couched as factual allegations insufficient to survive a motion to dismiss. *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.") (internal quotation marks omitted). Setting aside these conclusory allegations, Plaintiffs wholly fail to provide any factual support that permits an inference that any of the Defendants' actions were motivated by L.T.'s disability.

To the contrary, as Defendants point out, the only factual allegations Plaintiffs plead regarding the potential reason for the alleged mistreatment of L.T. demonstrate the opposite: Brenckle and Mumphrey's actions were taken in response to L.T.'s behavior—not her disability. By Plaintiffs' own admission, on May 22, 2024, when Brenckle and Mumphrey snatched L.T. and dragged her across the room, Brenckle and Mumphrey were acting "in response to" L.T.'s behavior of "hitting, kicking, spitting, refusing to move, elopement, and non-compliant task refusal behaviors." Rec. Doc. 6-1 at p. 17 (citing Rec. Doc. 1 at ¶ 18). While Brenckle and Mumphrey's response may been inappropriate, this is not sufficient to state a claim under the ADA or the Rehabilitation Act. Moreover, the fact that L.T.'s disability caused her to misbehave does not

automatically mean that Brenckle and Mumphrey inappropriately responded <u>because of</u> her disability. *See S.B. by and through S.B. v. Jefferson Par. Sch. Bd.*, No. 22-30139, 2022 WL 879369, at *4 (E.D. La. Feb. 1, 2022) ("These allegations do not support an inference that plaintiff was slapped based upon her disability, but rather in an effort to correct inappropriate behavior. They allege that during the course of instruction plaintiff behaved violently towards her instructors, who responded, inappropriately, with corporal punishment. They further allege that the violent outburst was the result of plaintiff's autism. However, the fact that plaintiff's violent outburst was caused by her disability does not mean that the instructors' responses were motivated by her disability.") (footnote omitted).

This Court is bound by the very clear Fifth Circuit precedent on this issue: "punishing a [student with a disability] for her disruptive behavior is not the same as treating her differently due to her disability." *S.B. on behalf of S.B. v. Jefferson Par. Sch. Bd.*, No. 22-30139, 2023 WL 3723625, at *4 (5th Cir. May 30, 2023); *see also T.O.*, 2 F.4th at 417 (affirming dismissal of Plaintiffs' ADA and Rehabilitation Act claims because Plaintiffs failed to plead facts that permitted the inference that Defendants' actions were "'by reason of his disability'—an essential element of a discrimination claim."). As was the case in both *S.B.* and *T.O.*, Plaintiffs fail to provide any facts sufficient to indicate that L.T. was mistreated because of her disability, and instead, the only facts Plaintiffs plead indicate that L.T. was mistreated because of her inappropriate behavior in which she hit, spit, kicked, refused to move, eloped, and refused to comply with tasks. Because Plaintiffs have not adequately alleged that any complained of behavior was based upon L.T.'s disability, Plaintiffs' ADA and Rehabilitation Act claims must be dismissed.

### III. Plaintiffs' State Law Claims

Plaintiffs also assert state law claims against all Defendants for negligence and violations of the Louisiana Human Rights Act, along with claims against Defendants Brenckle and Mumphrey for the intentional torts of battery, assault, and intentional infliction of emotional distress. *See* Rec. Doc. 1 at ¶¶ 52-76. If a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Upon dismissal of the federal claim that served as the basis for original jurisdiction, the district court retains its statutory supplemental jurisdiction over any related state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009).

A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction, however, is purely discretionary. *Id.* The "general rule" in the Fifth Circuit is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, but that rule "is neither mandatory nor absolute." *Batiste v. Island Recs. Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citations omitted). When deciding whether to retain jurisdiction, a court should "consider both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity[.]" *Id.* Under § 1367(c), a district court may decline to exercise supplemental jurisdiction if:

> (1) a claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; and (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

9

28 U.S.C. § 1367(c).

Because the Court has dismissed all of Plaintiffs' federal claims against each Defendant, pursuant to 28 U.S.C. § 1367(c)(3) quoted above, it declines to exercise supplemental jurisdiction here. Additionally, the Court finds that judicial economy and fairness weigh in favor of declining to exercise supplemental jurisdiction. Judicial economy is best served by declining to exercise jurisdiction, as this litigation is still at a relatively early stage—Plaintiffs filed their Complaint on August 26, 2024, and no Defendant has answered. Additionally, "the parties will not have to perform any redundant or particularly burdensome work in order to litigate in state court." *Thornton v. Lymous*, 469 F. Supp. 3d 470, 499 (E.D. La. 2020) (finding this applicable to the convenience factor, which weighed in favor of declining to exercise jurisdiction). There will also be no prejudice to the parties as the statute of limitations on Plaintiffs' state law claims remains tolled while the case is pending in federal court and for 30 days following dismissal. *Id.* (citing 28 U.S.C. § 1367(d); *Artis v. District of Columbia*, 583 U.S. 594 (2018)). Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and makes no substantive decision as to the legal validity of these claims.

### IV.  Defendants' Claims for Immunity

Because the Court finds that Plaintiffs fail to state a claim for a violation of the ADA or the Rehabilitation Act and declines to exercise supplemental jurisdiction over the remaining state law claims, the Court need not consider Defendants' additional arguments as to qualified immunity. *See* Rec. Doc. 6-1 at p. 6 (contending that each Defendant is "entitled to qualified immunity with respect to the Plaintiffs' claims against them.").

### V. Plaintiffs' Request for Leave to Amend

Finally, Plaintiffs request that, if the Court were to find that Plaintiffs failed to state a claim—as the Court has done—the Court grant Plaintiffs leave to amend pursuant to Rule 15(a)(2). Under Federal Rule of Civil Procedure 15(a)(2), when the time period for amending a pleading as a matter of course has passed, a party may amend its pleadings by consent of the parties or by leave of court. "The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). A court may consider numerous factors when deciding whether to grant a motion for leave to amend, including: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

Without benefit of a proposed pleading, however, the Court cannot consider whether any amendment would be futile here. The Court therefore declines to permit amendment without any showing by the Plaintiffs that the amendment could cure the factual deficiencies identified herein.

### CONCLUSION

For the reasons set forth herein, the undersigned RECOMMENDS that Defendants' Motion to Dismiss be GRANTED, Plaintiffs' federal law claims against all Defendants be DISMISSED WITH PREJUDICE, and Plaintiffs' state law claims be DISMISSED WITHOUT PREJUDICE. New Orleans, Louisiana, this 5th day of June, 2025.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge